```
IN THE UNITED STATES DISTRICT COURT FOR THE
           EASTERN DISTRICT OF OKLAHOMA

COURTNEY BRASHER,              )
                               )
          Plaintiff,           )
                               )
v.                             )    Case No. CIV-13-121-FHS-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
          Defendant.           )
```

## REPORT AND RECOMMENDATION

Plaintiff Courtney Brasher (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on November 10, 1990 and was 22 years old at the time of the ALJ's decision. Claimant completed her education through the eleventh grade. Claimant worked in the past as a certified nurses assistant. Claimant alleges an inability to work beginning January 13, 2010 due to limitations arising from seizures.

## Procedural History

On May 26, 2010, Claimant protectively filed for disability

insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On December 14, 2011, an administrative hearing was held before ALJ Trace Baldwin in McAlester, Oklahoma. On June 4, 2012, the ALJ issued an unfavorable decision on Claimant's applications. On March 8, 2013, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform a full range of work at all exertional levels with non-exertional limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to find Claimant met a listing; (2) failing to make a proper credibility determination; (3) failing to find her migraine headaches as a severe impairment; and (4) failing to fully develop the record.

## Consideration of a Listing

In his decision, the ALJ determined Claimant suffered from the severe impairments of seizure disorder and depression. (Tr. 13). The ALJ also found Claimant retained the RFC to perform a full range of work at all exertional levels except that she must avoid all exposure to hazards such as machinery, heights, and dangerous moving equipment. She could perform simple and some complex tasks with routine supervision, could relate to supervisors and peers, and could adapt to a work situation. (Tr. 16). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of janitor, hand packer, and bench assembler, all of which the expert found existed in sufficient numbers in the regional and national economies. (Tr. 22).

Claimant contends the ALJ improperly failed to find she met a listing with her seizure disorder. On August 11, 2009, Dr. Harold Goldman diagnosed Claimant with migraine headaches and seizure disorder. She reported that she experienced momentary spells in which she becomes confused but does not fall. Dr. Goldman found Claimant had generalized tonic-clonic seizures plus nocturnal seizures with incontinence. He placed her on Topamax. (Tr. 460). On September 9, 2009, Dr. Goldman reported that Claimant had missed her Topamax medication occasionally and, as a result, had

experienced two seizures. (Tr. 462). On December 16, 2009, Dr. Goldman found Claimant had had more small seizures so he increased the level of her Topamax medication. (Tr. 464).

On January 27, 2010, Claimant saw Dr. Jon Gustafson. He diagnosed Claimant with probable complex partial seizures with secondary generalization. In addition to the Topamax, Dr. Gustafson prescribed Keppra. (Tr. 468-69).

On April 12, 2010, Claimant was admitted in the hospital with acute pyelonephritis and seizures. Claimant's Keppra was increased and Claimant was directed to follow up with her neurologist. (Tr. 716).

On May 6, 2010, Claimant reported having 3-4 seizures per week. She stated that the Topamax had caused renal calculi and stuttering. Claimant's seizures interfered with her ability to work. (Tr. 748-50). On July 8, 2010, Claimant saw Dr. William J. Hayes. Dr. Hayes started Claimant on Tegretol for her seizure condition. He recommended a trial of Gabapentin and directed Claimant to begin weaning off of Keppra. (Tr. 753-54). Claimant reported an increase in seizure activity in August of 2010. Dr. Hayes increased the Tegretol. (Tr. 757). In September of 2010, Claimant reported about 4 seizures per week. (Tr. 758). Dr. Hayes increased the Gabapentin. Lab results indicated Claimant's level

6

of Tegretol was at therapeutic levels. (Tr. 759).

In March of 2011, Claimant reported to Dr. Hayes that she was having seizures several times per week. (Tr. 946). Dr. Hayes adjusted Claimant's medication repeatedly but she maintained that the seizures continued. (Tr. 1206-07).

On January 13, 2011, Dr. Penny Aber evaluated Claimant. Dr. Aber recognized Claimant had therapeutic levels of Tegretol. She sought clarification on Claimant's follow up appointments, the precise nature of Claimant's seizures to ascertain which listing she would fall under, the frequency of her seizures, and a measure of Gabapentin levels for consideration of a listing. (Tr. 256).

On February 14, 2011, Dr. Aber noted Claimant's medication regimen. She also noted Claimant had been non-compliant with her Topamax at one point in time. She concluded that Claimant was supposed to be taking Gabapentin in addition to Tegretol but that the Gabapentin level was not detectable indicating non-compliance. (Tr. 940).

In order to meet Listing 11.02 or 11.03, Claimant bears the burden at step three to demonstrate the following:

> 11.02 Epilepsy — convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment. With:

7

> A. Daytime episodes (loss of consciousness and convulsive seizures) or
>
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.
>
> 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02
>
> * * *
>
> 11.03 Epilepsy — nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.
>
> 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.03

The regulations also provide that adherence to prescribed therapy can ordinarily be determined from objective clinical findings in the report of the physician providing treatment for seizures and that evaluation must include consideration of the serum drug levels. Id.; Soc. Sec. R. 87-6.

The medical record contains three serum drug tests and two of the three tests indicate subtherapeutic levels of the anti-seizure drugs prescribed for Claimant. (Tr. 759, 932, 948). Claimant attempts to explain away this testing by stating it is unclear whether she was still prescribed Gabapentin. However, nothing in

the record would indicate this to be the case.  To the contrary, Claimant was prescribed Gabapentin in July - September of 2010 and February and March of 2011, indicating Claimant's prescription for the medication was active.  (Tr. 754-55, 941, 943-44, 1212).  The ALJ analyzed the requirements of Listings 11.02 and 11.03 and found Claimant's showing deficient.  (Tr. 14-15).

Claimant bears the burden of demonstrating a prima facie case of disability at steps one through four of the sequential evaluation.  Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003)(citation omitted).  This burden extends to step three where a claimant must prove he meets or equals all of the specified medical criteria associated with a particular listing.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  By failing to demonstrate continuous treatment compliance over at least a three month period as required by the Listings, Claimant failed to carry her burden at step three.  This Court finds no error in the ALJ's analysis.

Claimant also misinterprets the listing equivalency option in the regulations.  Claimant contends her condition is equal to a listing.  However, the equivalency standard only applies when an impairment is not specifically listed - a circumstance which does not exist in this case.  Brainard v. Sec. of Health & Human Servs., 1994 WL 170783, 2 (10th Cir.).

**Credibility Determination**

Claimant argues the ALJ "discredited" her on several occasions in his decision. Namely, the ALJ noted that she was non-compliant with medication, that stress exacerbated the seizure activity, that Dr. Hayes had characterized some of her seizures as "pseudoseizures," and that she mischaracterized her hospitalization in April of 2010. (Tr. 18). It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. This Court finds no error in the ALJ's credibility assessment generally or in the areas indicated by Claimant in her briefing specifically.

**Step Two Analysis**

Claimant asserts the ALJ should have found her migraine headaches as a severe impairment. The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See e.g.* Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage

in any substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). Nothing in the medical record indicates that Claimant's migraine headaches cause any further functional limitations than those imposed by the severe impairments already found by the ALJ in his decision.

**Duty to Develop the Record**

Claimant contends the ALJ violated his duty to develop the record when he failed to obtain the counseling records of Michelle Marvel. Ms. Marvel completed a Medical Source Statement on November 3, 2011 finding Claimant markedly limited in five functional areas. (Tr. 1240-41). In a narrative statement, Ms. Marvel set forth Claimant's statements to her regarding her memory problems, problems with her attention span, difficulties with anxiety, and difficulty dealing with criticism in a work environment. (Tr. 1243). Ms. Marvel concludes that Claimant's

11

anxiety level is high which "may interfere with her ability to complete a normal workday." Id.

The ALJ recognized Ms. Marvel's report but noted she did not provide any treatment notes. He found her to be an "other source" which is not entitled to significant weight in light of the inconsistency with the remainder of the medical record. He noted that her treating physicians have diagnosed her with depression rather than anxiety and that she had never undergone in-patient psychiatric hospitalization and had been treated conservatively for her depressive symptoms. Consequently, he gave her opinion little weight. (Tr. 20).

Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). Given the inconsistency with the remainder of the record, this Court finds no

error in the ALJ's assessment or his failure to obtain Ms. Marvel's records.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of September, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE